*DOUBRERE* vs. *GRILLIER'S SYNDIC.*

APPEAL from the court of the parish and city of New Orleans.

East'nDistrict.
*Feb.*1824.

DOUBRERE
*vs.*
GRILLIER'S
SYNDIC.

PORTER, J. delivered the opinion of the court. The petitioner states that previous to the year 1819, he was a slave, the proper y of Louis Doubrere of this city, that by the indulgence of his master, the assistance of some friends, and his own industry, he acquired, and was intrusted with, means to purchase his freedom. That a certain Pierre Grillier, also of the city, voluntarily undertook to effect this object, and purchased the petitioner from his former master for the sum of one thousand eight hundred dollars, which sum was paid to said Grillier for that purpose, by the petitioner; that he was emancipated, and ever since that time has enjoyed his freedom, until on the failure of his last master, he had been sequestered as making a part of h s property, and thrown into prison. He concludes by praying that a decree may be rendered, establishing his right to be free, that he be liberated from imprisonment, and that he should have such other relief as his case may require.

When it is shewu by circumstances, *dehors* the act, *sous seing prive*, that it was executed, according to its purport, it will have effect against third persons, from the day of its execution.

So, when possession has followed the execution.

East'nDistrict.
*Feb.* 1824.

DOUBRERE
*vs.*
GRILLIER'S
SYNDIC.

The defendant answers by a general denial of all the allegations just mentioned.

On this issue, evidence both oral and written, was given on the trial in the court below. The written consisted of two receipts, one dated May 1819, the other in October of the same year, by which it appears that seventeen hundred dollars were paid by the plaintiff to his former master. In the receipt signed by Grillier, these expressions are found, "Recu de Mr. Louis, la somme de quatorze cens gourdes, en especes, a valoir sur la somme de dix hui$^t$ cen gourdes, qu'il doit, pour son achat personnel, c'est a dire pour sa propre liberte."

Also, a licence from the collector of the port of Orleans, dated the 3d September, 1821; in which the plaintiff was authorized to carry on trade in a coasting vessel called Theresa, and the books of the custom house, shewing that Grillier signed, as surety, the bonds then furnished by the petitioner, as a freeman, to obtain this license,

The oral evidence, it is unnecessary to state in detail. It went strongly in confirmation of the result furnished by the written—that a contract had existed between the master and slave, for the freedom of the latter, that pay-

ment had been made, and that the plaintiff was in the actual exercise of his freedom.

East'nDistrict.
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

From this statement it is seen, that the cause presents a question of the greatest importance to the petitioner, and of no inconsiderable magnitude to the public, and it is this, "whether all *bona fide* contracts, of immoveable property or slaves, made *sous seing prive*, are void against creditors, and can be set aside by them, in case of the insolvency of their debtor.

The affirmative of this proposition, seemed so startling, and to lead to consequences so destructive of confidence and good faith in dealings between men, that when first mentioned, it appeared to us wholly untenable; yet when examined closely it cannot be disguised, that it is one of very serious difficulty, and on which it is not surprising a difference of opinion is found to exist.

The counsel, who has argued in support of it, has relied principally on that passage of the code, which treats of the alienation of immoveable property, and by which it is provided that neither the sale or hypothecation of it shall effect third parties, (*tiers*) unless the act is recorded in a public office; and *third parties*, it is contended, are all persons who do not sign,

East'n District.
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

or assist at the confection of the instrument, which is opposed to them.

As nothing in this record shews that any of the creditors of the insolvent, had acquired either mortgage or privilege on his real estate, previous to his failure, or stand in the character of second purchasers by public act; we are saved the necessity of going into a perplexing and difficult question, in relation to the rights of persons so circumstanced, and those who hold under acts *sous seing prive*. Those who are curious to obtain information on this point, can consult the learned disquisition of Merlin and Toullier, on the articles of the Napoleon code, which are similar to ours, and in regard to the true construction of which, these eminent jurists are found in direct opposition to each other. *Merlin's questions de droit,*(3d *Ed.*) *vol.* 6, 185. *Toullier, droit civil francais, vol* 10, *appendix.*

Our enquiry here, is confined to the rights of persons who are not second purchasers, and who do not possess either privilege or mortgage on the thing sold, who are in fact mearly simple or chirographary creditors. How a *bona fide* sale by their debtor, *followed by delivery,* can, in any respect, injure them, we have after

much reflection, been totally at a a loss to dis-
cover.  It gives those persons with whom they
have contracted, no false credit; consequently
does not lead them into error, as to his means.
It does not diminish the fund, out of which
they are to be paid, for if the contract is a
fair one, the object received represents in the
mass of the property, that which was alienated,
whence then is the right derived to set the sale
aside?  We are told in the article of our code,
already cited, which says that the sale shall
only have effect against third persons, from
the day it is enregistered.  But, that article
when attentively examined, uses language
which furnishes a key to the meaning with
which the legislature used the expression "not
parties to the act," and repels the construction
now attempted to be put on these words.—
The provision reads thus, "the sale of any im-
moveable, or slave, made under private signa-
ture, *shall have effect to the prejudice* of persons
not parties to it, only from the day, said sale
was registered in the office of a notary."  Now,
from the best view, which we have been able
to take of this matter, we repeat that we are
unable to see what *prejudice* it works to the
creditors to consider, the contract as good, un-

East'n District.
*Feb.* 1824.

DOUBRERE
*vs.*
GRILLIER's
SYNDIC.

East'n District.
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

less we should consider it a prejudice to them, that they cannot make an honest purchaser give up what he has bought, and come on the estate for the price. But this was surely not what the legislature meant. Had it been contemplated by them, that every act should be considered as working an injury to the creditor, when he could be benefited by avoiding it, language more unequivocal would have been resorted to. There is a clear distinction in reason, as there is certainly one in law, between that which occasions *you a loss*, and that which prevents you from gaining; between the rights of him who claims the right to set aside an act *damno vitando*, and he who seeks to annul it *lucro captando*. Supposing this sale had never been made, the condition of the persons now seeking to annul it, would not in any point, important to their interests, be at all changed. True it is the insolvent would have had the slave in his possession, but then he would not have had the seventeen hundred dollars, he received for him. There is not a shadow of pretext then, for saying that it is giving effect to this contract to *their prejudice*, to refuse them the right to set it aside. We think that by the expressions *(tiers)* third par-

ties, were meant, those who subsequently to
the sale under private signature, acquired a
specific right in, or lien on, the thing alienated,
and what would be the effect even of that right,
when opposed by a sale, *sous seing privé ac-
companied by possession*, we will examine when
the cases arise, as that now before us presents
difficulties enough without seeking those which
do not belong to it. The correctness of the pos-
ition, we assume, in relation to this case, we
think will be in some measure illustrated by
supposing, that, before the insolvency of the
debtor, an action was brought by a simple
creditor, to set aside a sale made by his debtor,
merely because it was passed under private
signature. Could such an action be maintain-
ed? If it can, it is strange that no trace of
such a suit ever having been instituted can be
found; at least our researches have not led us
to any. We had thought, indeed, until this
matter was stirred, that the rights of creditors,
who had no lien on the estate of their debtor,
were limited to those contracts which had
been entered into with an intention to defraud
them. An opinion which is strongly fortified
by that article of our code, which in legislat-
ing on the effect which contracts have against

East'n District
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

East'nDistrict.
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

persons, not parties to them, states, that the creditor may attack the *acts* of his debtor *done in fraud of his rights.* Expressions which would seem to denote almost as clearly as if stated in affirmative terms, that they could not set aside acts, which *were not made in fraud of their rights,* and in further support of this position, we may remark that no writer, that we have been able to consult, carries the doctrine any further; and, upon principle the limitation seems to us not only just but necessary. If then this right does not exist, before the insolvency of the debtor is declared, does that circumstance confer it? We are of opinion it does not. The only change, which it makes in the privileges conferred by law on those to whom the bankrupt may be indebted is, that, after this event, they are obliged to exercise collectively, through the medium of their common mandataries, the syndics, the rights which they possessed, and might have individually put in force, antecedent to the failure.

The strongest argument against the opinion just expressed, is that which is drawn from the well known principle of law, that acts under private signature have no date against third parties; giving it its full force, this case would

then stand thus; the creditors find a legal title, in the insolvent, to the plaintiff, vested by a public sale. They have, consequently, a right to consider him a part of the property surrendered, and as such take him into possession, unless that title is divested by some act, previous to the failure. That which is opposed to them, has no date, but from the time it is set up in the suit now pending, and therefore can have no effect, because it must be considered as made after the cession.

East'n District.
Feb. 1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

If the rule we have just referred to, were universal and unbending in its application, there would perhaps be great weight in this objection. But that rule, like every other general one, has its exceptions; one of these is, that whenever it is proved by circumstances, *dehors* the act, that it was executed according to its purport, it will have effect against third persons from the day it was really executed. Pothier tells us, that though you cannot set up a sale *sous seing prive*, against a judgment creditor, who had levied his execution on the object conveyed by it, because as to him it has no date antecedent to the attaching of his right, yet if you prove the death of the vendor, to have happened long before, you may success-

East'n District.
*Feb.* 1824.

DOUBRERE
*vs.*
GRILLIER'S
SYNDIC.

fully oppose it to the execution; because the danger of fraud by antidating, is completely removed; an other exception, which the same author gives, is, *where possession has followed the execution of the instrument.* Toullier, who cites these examples, and approves of them, states that the 1,328th article of the Napoleon code, (which corresponds with the 224th of ours, page 306,) is not considered as having wrought any change in this doctrine. *Pothier traite des obligations, no,* 715,*ibid. de la prescription, no* 99. *Toullier, droit civil francais, liv.* 3, *chap.* 6, §1, *nos.* 240, 241, 242 *and* 243.

This case comes completely within the reasons of these exceptions. The existence of the agreement, on which the petitioner relies, antecedent to the insolvency of the master, is proved here by the personal exercise of the rights of a freeman, from the time when the agreement produced was executed.

We need not notice the various bills of exceptions, taken to the introduction of the parol evidence, because our conclusions would be the same on the written . As to the objection made to the introduction of the documents from the custom house, we think it quite untenable. They made a part of the *rerum gestarum*,

and were clearly good evidence to shew that the petitioner was in the actual enjoyment of his freedom in the presence of his former master.

East'nDistrict.
Feb.1824.

DOUBRERE
vs.
GRILLIER'S
SYNDIC.

It is therefore ordered, adudged, and decreed, that the judgment of the parish court be annulled, avoided and reversed, and it is further ordered, adjudged, and decreed that on the payment by the plaintiff, of the sum of one hundred dollars, being the balance of the price due by him to his former master, he be released from the sequestration granted in this case, and discharged from confinement, and that the creditors of Grillier, be perpetually enjoined from claiming the petitioner as a slave. It is further ordered, adjudged, and decreed, that the defendant pay costs in both courts.

*Morse* for the plaintiff, *Moreau* for the defendant.